# THE HAMMOCKS LLC
# D/B/A RICHMOND HILL INN
# FINANCIAL STATEMENTS
# AND SUPPLEMENTARY INFORMATION
For the Year Ended December 31, 2007

1182

TABLE OF CONTENTS

ACCOUNTANTS' REPORT 1

FINANCIAL STATEMENTS
- Balance Sheet 2
- Statement of Income 3
- Statement of Changes in Members' Equity 4
- Statement of Cash Flows 5
- Notes to Financial Statements 6-11

SUPPLEMENTARY INFORMATION
- Schedule of Revenue 13
- Schedule of Cost of Sales 14
- Schedule of Operating Expenses 15

# INDEPENDENT AUDITOR'S REPORT

To the Members of
The Hammocks, LLC d/b/a Richmond Hill Inn

We have audited the accompanying balance sheet of The Hammocks, LLC d/b/a Richmond Hill Inn (a corporation) as of December 31, 2007, and the related statements of income, changes in members' equity, and cash flows for the year then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of The Hammocks, LLC d/b/a Richmond Hill Inn as of December 31, 2007, and the results of its operations and its cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.

The accompanying financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 12 to the financial statements, the Company has suffered recurring losses and has a net capital deficiency. These conditions raise substantial doubt about its ability to continue as a going concern. Management's plans in regard to these matters are also described in Note 12. The financial statements do not include any adjustments relating to the recoverability and classification of asset carrying amounts or the amount and classification of liabilities that might result should the Company be unable to continue as a going concern.

Our audit was performed for the purpose of forming an opinion on the basic financial statements of The Hammocks, LLC d/b/a Richmond Hill Inn, taken as a whole. The accompanying supplemental information is presented for information purposes only and is not part of the audited financial statements and its respective notes.

David G. Worley, C.P.A., P.A

David G. Worley, CPA, PA

Asheville, North Carolina
February 15, 2008

# BALANCE SHEET
## DECEMBER 31, 2007

### ASSETS

| | 2007 |
|---|---|
| **Current Assets** | |
| Cash | $ 37,010 |
| Gift certificate deposits receivable | 128,356 |
| Inventory | 140,557 |
| Prepaid advertising | 23,725 |
| Prepaid insurance | 12,263 |
| Total Current Assets | 341,911 |
| **Property** | |
| Land | 2,306,897 |
| Buildings | 7,656,224 |
| Furniture and fixtures | 512,204 |
| Equipment | 903,519 |
| | 11,378,844 |
| Less accumulated depreciation | 727,436 |
| | 10,651,408 |
| **Other Assets** | |
| Utility deposits | 20,454 |
| Goodwill | 250,000 |
| Total Other Assets | 270,454 |
| **Total Assets** | $ 11,263,773 |

### LIABILITIES AND MEMBERS' EQUITY

| | |
|---|---|
| **Current Liabilities** | |
| Line of credit | $ 195,000 |
| Accounts payable | 208,679 |
| Promissory note payable | 6,800,000 |
| Accrued expenses | 354,810 |
| Gift certificates | 147,449 |
| Customer deposits | 97,329 |
| Accrued interest | 46,634 |
| Current portion of long-term debt | 10,714 |
| Total Current Liabilities | 7,860,615 |
| Long-term debt, net of current portion | 22,748 |
| Total Liabilities | 7,883,363 |
| **Members' Equity** | 3,380,410 |
| **Total Liabilities and Members' Equity** | $ 11,263,773 |

The accompanying notes are an integral part of these financial statements.

## STATEMENT OF INCOME
## FOR THE YEAR ENDED DECEMBER 31, 2007

| | 2007 | |
|---|---|---|
| | Amount | % |
| **SALES** | $ 3,523,298 | 100.0% |
| **COST OF SALES** | | |
| Personnel costs | 1,288,682 | 36.6% |
| Food and beverage costs | 732,669 | 20.8% |
| Guest and amenities costs | 159,079 | 4.5% |
| Housekeeping costs | 62,099 | 1.8% |
| Total Cost of Sales | 2,242,529 | 63.6% |
| Gross Profit | 1,280,769 | 36.4% |
| **OPERATING EXPENSES** | | |
| General and administrative | 926,688 | 26.30% |
| Personnel | 372,932 | 10.58% |
| Advertising and marketing | 148,878 | 4.23% |
| Total Operating Expenses | 1,448,498 | 41.1% |
| Operating income (loss) | (167,729) | -4.8% |
| **OTHER INCOME (EXPENSES)** | | |
| Interest expense | (677,868) | -19.2% |
| Depreciation expense | (329,270) | -9.3% |
| Penalties | (5,664) | -0.2% |
| | (1,012,802) | -28.7% |
| Net income (loss) | $ (1,180,531) | -33.5% |

The accompanying notes are an integral part of these financial statements.

STATEMENT OF CHANGES IN MEMBERS' EQUITY
FOR THE YEAR ENDED DECEMBER 31, 2007

| | LLC Members | Individual Members | Total |
|---|---|---|---|
| **Members' Equity-Beginning of Year** | $ 2,122,564 | $ 548,770 | $ 2,671,334 |
| Prior period adjustments | (505,852) | (315,676) | (821,528) |
| Net income (loss) | (1,001,689) | (178,842) | (1,180,531) |
| Capital contributions | 2,391,135 | 320,000 | 2,711,135 |
| **Members' Equity-End of Year** | $ 3,006,158 | $ 374,252 | $ 3,380,410 |

The accompanying notes are an integral part of these financial statements.

## STATEMENTS OF CASH FLOWS
### For the Year Ended December 31, 2007

| | 2007 |
|---|---|
| **Cash flows from (used by) operating activities:** | |
| Net income (loss) | $ (1,180,531) |
| Adjustments to reconcile net income (loss) to net cash | |
| Provided by (used in) operating activities: | |
| Depreciation | 329,270 |
| (Increase) decrease in: | |
| Accounts receivable gift certificates | 5,933 |
| Inventory | (37,245) |
| Prepaid advertising | 48,856 |
| Prepaid insurance | (12,262) |
| Increase (decrease) in: | |
| Accounts payable | (15,796) |
| Accrued expenses | 176,458 |
| Sales tax payable | 39,672 |
| Gift certificates payable | (23,740) |
| Customer deposits | (76,270) |
| Net cash from (used by) operating activities | (745,655) |
| **Cash flows from (used by) investing activities** | |
| Purchases of equipment | (32,619) |
| Net cash from (used by) investing activities | (32,619) |
| **Cash flows from (used by) financing activities** | |
| Repayment of long-term capital lease | (10,714) |
| Repayment of long-term debt | (1,900,000) |
| Members' contributions | 2,636,135 |
| Net cash flows from (used by) financing activities | 725,421 |
| **Net increase (decrease) in cash** | (52,853) |
| **Cash, beginning of year** | 89,863 |
| **Cash, end of year** | $ 37,010 |

**Supplemental Cash Flow Disclosures**

| | |
|---|---|
| Cash paid during the year for: | |
| Interest | $ 626,530 |

The accompanying notes are an integral part of these financial statements.

# NOTES TO FINANCIAL STATEMENTS FOR THE YEAR ENDED DECEMBER 31, 2007

## NOTE 1: SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

### Operations

The Hammocks, LLC d/b/a Richmond Hill Inn (the "Company") is a historical inn located in Asheville, North Carolina offering luxury accommodations and fine dining. Other services include discounts on local attractions and rental of the grounds and restaurant for receptions, banquets and group events.

### Basis of Accounting

The operating agreement of the Limited Liability Company specifies that each member's capital account shall be determined and maintained using the tax basis of accounting in accordance with Treasury Regulations adopted under Section 704(b) of the Internal Revenue Code. This requires that items of income, gain, loss, deduction or credit be allocated to the members in accordance with the operating agreement. These financial statements, however, have been prepared using generally accepted accounting principles in order to satisfy financial reporting requirements. The principal difference between generally accepted accounting principles and the income tax basis of accounting for The Hammocks, LLC d/b/a Richmond Hill Inn is the use, for financial reporting, of the accrual basis of accounting, the calculation of depreciation over the estimated useful lives of the assets and the calculation of the amortization of intangibles over their economic lives. The Internal Revenue Cods assigns statutory lives to assets.

The Company is treated as a partnership for federal and state income tax purposes. Accordingly, no provision for income taxes is reported. The Company's income or loss is reported on the individual income tax returns of the members.

### Use of Estimates

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements. Estimates also affect the reported amounts of revenue and expenses during the reporting period. Actual results could differ from those estimates.

### Cash and Cash Equivalents

The Company considers all highly liquid investments with a maturity of three (3) months or less when purchased to be cash equivalents. Cash consists of money held in a checking account and petty cash.

### Fair Value

The Company estimates that the fair value of all financial instruments at December 31, 2007, does not differ materially from the aggregate carrying values of its financial instruments recorded in the accompanying balance sheet.

## NOTE 1: SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (continued)

### Gift Certificate Deposits Receivable

The accounts receivable balance consists of the value of the outstanding gift certificates assumed by the Company on October 10, 2005. The sales agreement entered into on October 10, 2005 between the Company and the prior owner, Richmond Hill, Inc., states that the prior owner will hold the funds received from the sale of gift certificates dated prior to October 10, 2005 and that the Company will receive reimbursement for these gift certificates dated prior to the sale as those certificates are redeemed. The outstanding accounts receivable balance for gift certificates was $128,356 as of December 31, 2007. The Company considers gift certificates receivable to be fully collectible as of December 31, 2007; accordingly, no allowance for doubtful accounts is required. If amounts become uncollectible, they will be charged to operations when that determination is made.

### Inventory

Inventories are valued at the lower of cost, on the first-in, first-out method, or market.

### Property

Property is recorded at cost and is depreciated over estimated useful lives based on the straight-line method. Depreciation expense for the year ended December 31, 2007 was $329,270. Estimated useful lives of the property are as follows:

| | Estimated Useful Lives |
|---|---|
| Buildings and Building Improvements | 40 Years |
| Equipment | 5-10 Years |
| Furniture and Fixtures | 5-10 Years |
| Grounds Improvements | 5-10 Years |

The cost of assets sold or otherwise disposed of and the accumulated depreciation thereon are eliminated from the accounts and the resulting gain or loss reflected in income. There were no assets sold for the year ended December 31, 2007. Expenditures for maintenance and repairs are charged to income as incurred.

### Goodwill

Statement of Financial Accounting Standards (SFAS) No. 142; *Goodwill and Other Intangible Assets;* addresses the initial recognition and measurement of intangible assets acquired outside a business combination and the recognition and measurement of goodwill and other intangible assets subsequent to their acquisition. Under these rules, goodwill will not be amortized since it has an indefinite life. Instead, it will be subject to annual impairment tests. There were no changes in the carrying amount of goodwill for the year ended December 31, 2007.

### Advertising

The Company expenses the cost of advertising as it is incurred. Advertising expense for the period ended December 31, 2007 was $148,878.

## NOTES TO FINANCIAL STATEMENTS
## FOR THE YEAR ENDED DECEMBER 31, 2007

**NOTE 2: INVENTORY**

Inventories consist of the following:

| | |
|---|---|
| Wine, beer and liquor | $ 113,930 |
| Food and kitchen supplies | 15,252 |
| Gift shop | 11,375 |
| Total | $ 140,557 |

**NOTE 3: LINE OF CREDIT**

The Company obtained a $195,000 line of credit on June 5, 2007. The interest rate on the line of credit is 8%, is secured by two vacant lots located on Richmond Hill Drive and is personally guaranteed by a member owner. The balance of the line of credit as of December 31, 2007 was $195,000 and the terms provide for interest only payments monthly with the principal balance due June 5, 2008.

Interest paid on this note was $14,715 for the year ended December 31, 2007.

Interest expense on this note was $16,015 for the year ended December 31, 2007.

**NOTE 4: PROMISSORY NOTE PAYABLE**

The Company entered into a purchase-money promissory note agreement on October 10, 2005 in the amount of $8,800,000. Monthly interest only payments at 6.5% per annum were made beginning November 10, 2005 and ending April 9, 2006. Interest only payments thereafter were made using a floating rate based on prime plus ½%. The original agreement states that the balance of the note was due October 9, 2006. The note is secured by a purchase-money deed of trust which is a first lien against real property in Buncombe County, North Carolina and a deed of trust which is a first lien against real property in Iredell County, North Carolina. In the event of default, the payee reserved the right to declare the entire unpaid principal and accrued interest to be immediately due and payable upon demand.

On October 9, 2006, the Company and Richmond Hill, Inc. signed a modification agreement extending the final payment date to November 9, 2007; with a required principal payment of $1,900,000 due no later than January 30, 2007.

On October 9, 2007, the Company and Richmond Hill, Inc. signed an additional modification agreement to this promissory note whereby the Company agreed to pay the final principal balance of $6,800,000 on January 9, 2008.

Activity for this promissory note for the year ended December 31, 2007 is as follows:

| | |
|---|---|
| Promissory Note Payable 1/1/2007 | $ 8,700,000 |
| Principal paid January 2007 | (1,900,000) |
| Promissory Note Payable 12/31/2007 | $ 6,800,000 |

Interest paid on this note totaled $609,090 for the year ended December 31, 2007.

Interest expense on this note totaled $654,424 for the year ended December 31, 2007.

**NOTES TO FINANCIAL STATEMENTS**
**FOR THE YEAR ENDED DECEMBER 31, 2007**

**NOTE 5: COMPENSATED ABSENCES**

In accordance with financial accounting standards based on Statement No. 43, *Accounting for Compensated Absences,* the company accrues vacation and sick pay when earned. The balance of accrued vacation pay and sick pay was $62,310 as of December 31, 2007.

**NOTE 6: RETIREMENT PLANS**

The Company sponsors a 401 (k) salary deferral plan which allows employees to defer a percentage of their wages, in a retirement plan. The plan covers all eligible employees who have completed one year of service, are 21 years of age, and work a minimum of 1,000 hours per year, with enrollment occurring on January of July 1st. Richmond Hill Inn will match 50% of the employee's investment up to an employee's investment of 5%. Employee contributions are 100% vested with Richmond Hill Inn's contributions vested based on years of service as follows:

| Years Employed | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| % Vested | 20% | 40% | 60% | 80% | 100% |

Pension contributions paid was $7,460 for the year ended December 31, 2007.

Pension expense was $8,602 for the year ended December 31, 2007.

**NOTE 7: MEMBERS' EQUITY**

Members' equity is comprised of the following classes:

| | |
|---|---|
| Managing members | $ 74,955 |
| Non-managing members | 3,307,255 |
| Total | $3,382,210 |

Managing and non-managing members have the same rights upon sale of dissolution of the limited liability company, namely, to share in the distribution of net assets in proportion to the balances in their capital accounts. No member may sell, assign, transfer, mortgage, or pledge his interest in the limited liability company without prior written consent of all members.

**NOTE 8: CAPITAL LEASES**

The Company entered into one capital lease agreement for a telephone system beginning November 18, 2005 which requires 60 equal monthly payments of $1,060; the effective rate of interest is 7% based on prime as stated by the Federal Reserve for November 14, 2005; the lease includes a $1 purchase option at the end of the lease term. The leased equipment held under this capital lease at December 31, 2007, had a cost of $53,519 and the accumulated depreciation on this leased asset as of December 31, 2007 totaled $11,596.

## NOTES TO FINANCIAL STATEMENTS
## FOR THE YEAR ENDED DECEMBER 31, 2007

**NOTE 8: CAPITAL LEASES (continued)**

Future minimum lease payments required under the lease for the year ended December 31, 2007 are as follows:

| | |
|---|---|
| 2008 | $ 10,714 |
| 2009 | 11,489 |
| 2010 | 11,259 |
| | $ 33,462 |

Interest paid on capital leases for the year ended December 31, 2007 was $2,725.

**NOTE 9: RELATED PARTY TRANSACTIONS**

On occasion, member owners of the Company perform services or use personal funds to purchase goods on behalf of the Company. As of December 31, 2007, the Company owed two member owners $3,000 and $9,518. These amounts are considered current liabilities and are included in the accounts payable balance for December 31, 2007.

During the year ended December 31, 2007, the Company had the following non-cash transaction related to the acquisition of spa equipment and other furniture and equipment valued at $75,000 by means of purchases made by a member owner for the Company. The member owner has elected to record this transaction as a capital contribution.

**NOTE 10: PRIOR PERIOD ADJUSTMENT**

A prior period adjustment was made to the beginning members' equity due to the following:

| | |
|---|---|
| Members' Equity Beginning of Year – as previously reported | $ 2,671,334 |
| Adjustment for overstatement of members' beginning Equity; overstatement of land and other assets | ( 1,204,245) |
| Adjustment for understatement of members' beginning Equity; capital contributions stated as loans in error | 167,000 |
| Adjustment for understatement of members' beginning Equity; capital contribution of land by a member | 211,896 |
| Adjustment for understatement of capital leased equipment depreciation expense | ( 6,244) |
| Adjustment for overstatement of lease expense; Principal portion of capital lease for prior years | 10,065 |
| Balance at beginning of year, as restated | $ 1,849,806 |
| Capital Contributions for year ended December 31, 2007 | 2,711,135 |
| Net loss for year ended December 31, 2007 | ( 1,180,531) |
| Members' Equity End of Year – December 31, 2007 | $ 3,380,410 |

**NOTES TO FINANCIAL STATEMENTS
FOR THE YEAR ENDED DECEMBER 31, 2007**

**NOTE 10: PRIOR PERIOD ADJUSTMENT (continued)**

The effect of restatement on the prior years' income and equity is as follows:

| | |
|---|---|
| Net increase in income | $ 3,821 |
| Net decrease in capital contributions | ($825,349) |
| Total prior period adjustment | ($821,528) |

**NOTE 11: SUBSEQUENT EVENTS**

Subsequent to December 31, 2007, the Company was not able to make the required payment of principal and interest due on the promissory note payable to Richmond Hill, Inc. due January 9, 2008. The Company received a formal notice dated January 11, 2008 that the note holder intends to exercise the remedies to which it is entitled under the terms of the note, deeds of trust and security agreement. The Company has thirty days or until February 11, 2008, to cure the default.

**NOTE 12: GOING CONCERN**

As shown in the accompanying financial statements, the Company incurred a net loss of $1,178,733 during the year ended December 31, 2007, and as of that date the Company's current liabilities exceeded its current assets by $7,516,904. Those factors as well as the uncertain conditions that the Company faces regarding its loan agreements as discussed in Note 11, create an uncertainty about the Company's ability to continue as a going concern. Management of the Company is developing a plan to reduce its current liabilities by obtaining permanent long term financing of the current $6,800,000 promissory note and through the sale of an adjacent 40 acre tract of land. The ability of the Company to continue as a going concern is dependent upon the securing of permanent financing and the sale of land. The financial statements do not include any adjustments that might be necessary if the Company is unable to continue as a going concern.

SUPPLEMENTAL INFORMATION

1195

RHI0301

## SCHEDULE REVENUE
## FOR THE YEAR ENDED DECEMBER 31, 2007

| | 2007 Amount | % |
|---|---|---|
| **REVENUE** | | |
| Revenue-Inn | | |
| Room sales Garden Pavilion | $ 853;845 | 24.2% |
| Room sales Mansion | 600,200 | 17.0% |
| Room sales Croquet Cottages | 466,965 | 13.3% |
| Biltmore Ticket Sales | 28,768 | 0.8% |
| Gift shop sales | 20,437 | 0.6% |
| Advance deposits forfeited | 10,817 | 0.3% |
| Rental income - houses | 4,500 | 0.1% |
| Total revenue - Inn | 1,985,532 | 56.4% |
| Revenue-Gabrielle's Restaurant | | |
| Food sales | 701,128 | 19.9% |
| Wine sales | 374,889 | 10.6% |
| Liquor sales | 45,961 | 1.3% |
| Beer sales | 3,573 | 0.1% |
| Flower sales | 1,497 | 0.0% |
| Total revenue - Gabrielle's Restaurant | 1,127,048 | 32.0% |
| Revenue-Ambassador Grille | | |
| Food sales | 83,116 | 2.4% |
| Wine sales | 17,298 | 0.5% |
| Liquor sales | 6,229 | 0.2% |
| Beer sales | 1,402 | 0.0% |
| Flower sales | 75 | 0.0% |
| Total revenue - Ambassador Grille | 108,120 | 3.1% |
| Revenue-Amenities and Functions | | |
| Food sales | 111,796 | 3.2% |
| House service charges | 59,167 | 1.7% |
| Conference room rentals | 50,601 | 1.4% |
| Amenities sold | 39,930 | 1.1% |
| Wine sales | 23,692 | 0.7% |
| Flower sales | 5,978 | 0.2% |
| Beer sales | 5,848 | 0.2% |
| Liquor sales | 5,586 | 0.2% |
| Total revenue - Amenities and Functions | 302,598 | 8.6% |
| Total revenue | $ 3,523,298 | 100.0% |

The accompanying notes are an integral part of these financial statements.

## SCHEDULE OF OPERATING EXPENSES
## FOR THE YEAR ENDED DECEMBER 31, 2007

| | 2007 | |
|---|---|---|
| | Amount | % |
| **OPERATING EXPENSES** | | |
| Salaries, wages and payroll taxes | $ 372,932 | 10.6% |
| Utilities | 219,713 | 6.2% |
| Advertising and marketing | 148,878 | 4.2% |
| Bank and credit card fees | 102,995 | 2.9% |
| Liability insurance | 86,768 | 2.5% |
| Dining room supplies | 83,574 | 2.4% |
| Health insurance | 67,543 | 1.9% |
| Repairs and maintenance-building | 63,586 | 1.8% |
| Property taxes | 60,625 | 1.7% |
| Musicians | 43,770 | 1.2% |
| Kitchen supplies | 37,467 | 1.1% |
| Professional fees | 35,429 | 1.0% |
| Office expense | 29,171 | 0.8% |
| Equipment rental | 8,875 | 0.3% |
| Workers' compensation insurance | 18,994 | 0.5% |
| Grounds maintenance | 18,183 | 0.5% |
| Employee meals | 17,921 | 0.5% |
| Retirement | 8,602 | 0.2% |
| Employee life insurance | 7,508 | 0.2% |
| Licenses and fees | 5,854 | 0.2% |
| Supplies | 3,794 | 0.1% |
| Dues and subscriptions | 3,210 | 0.1% |
| Travel | 3,106 | 0.1% |
| Total general and administrative expenses | $ 1,448,498 | 41.1% |

The accompanying notes are an integral part of these financial statements.

## NON-WAIVER AGREEMENT

WHEREAS The Hammocks LLC of 07 Richmond Hill Drive, Asheville, NC 2880 hereinafter called the Assured, holds a policy of insurance no. OF-3M2977 issued by Harleysville Insurance Company, hereinafter called the Company, and an event occurred on or about March 19, 2009 in connection with which the said Assured is claiming benefits under the said policy, but the said Company contends, or may later contend, that the Assured is not entitled to such benefits.

AND WHEREAS, it appears that the interests of both the Assured and the Company may be better served and protected by an investigation of the facts and/or entering of defense on behalf of the Assured:

NOW, THEREFORE, it is understood and agreed between the Assured and the Company that the Company may by its representatives proceed to investigate the said accident, or undertake the defense of any suit growing out of the said accident, without prejudice to the rights of the said Company, and that no action heretofore or hereafter taken by the Company shall be construed as a waiver of the right of the Company, if in fact it has such right, to deny liability and withdraw from the case; also, that by the execution of this agreement the Assured does not waive any rights under the policy.

Executed in duplicate this 21 Day of March 20 09 .

[signature] FOR THE COMPANY

ASSURED

WITNESS

WITNESS

March 21, 2009, Mr. Gray Wants to Have The Form Reviewed By His Attorney Before Signing. A Copy of The Non-Waiver Agreement Has Been Left With Him.

[signature]

BCS-11

EXHIBIT 14 Gray

PENGAD 800-631-6989



# PERMISSION TO EXAMINE FIRE SCENE

I/We acknowledge that the property located at 87 Richmond Hill Drive in Asheville, North Carolina has been damaged by a fire or explosion. I/We also understand that the policy of insurance issued by Harleysville Insurance or one of its subsidiaries requires that the damaged property be displayed as reasonably often as necessary and that I/We cooperate with the investigation into the cause of the loss. Understanding this and agreeing to cooperate, I/We authorize the below-named investigators to enter the above-described property for the purpose of conducting the investigation into the origin and cause of this loss. I/We also understand that it may be necessary for Unified Investigations ~ Gary Bartlett, one its subsidiaries, or a firm acting on their behalf to retain additional experts to assist in the determination of the cause of loss and I/We agree to grant their access to the damaged property. I/We also understand that this examination may take more than one day and this permission is valid for the duration of the examination of the scene. I/We further acknowledge that it may be necessary to collect physical evidence to confirm the cause of the loss and the investigators have my/our permission to remove the physical evidence that they deem necessary. My/Our acknowledgment of the above is confirmed by my/our signature below.

Investigator (s) [signature]

Signature(s) [signature]

Printed Name William [illegible]

Relationship

Date 3/21/07 Time 12:30 pm.

EXHIBIT 15 Gray

PENGAD 800-631-6989

RHI0541