IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

In the matter of:            )
                             )
THE HAMMOCKS, LLC, dba       )
Richmond Hill Inn,           ) Case No. 09-10332
                             ) Asheville, NC
   Debtor.                   ) October 21, 2009, 11:18 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GEORGE R. HODGES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

David G. Gray
Westall, Gray, Connolly & Davis, P.A.
81 Central Ave.
Asheville, NC 28801

Brady A. Yntema
Pinto Coates Kyre & Brown PLLC
P.O. Box 4848
Greensboro, NC 27404

Michael R. Nelson
Nelson, Levine, de Luca & Horst
518 East Township Line Road, Suite 300
Blue Bell, Pennsylvania  19422

Marjorie Rowe Mann
Roberts and Stevens, PA
Post Office Box 7647
Asheville, NC 28801

Electronic Recorder
Operator:                        Brian Murphy

Transcriber:                     Patricia Basham
                                 6411 Quail Ridge Drive
                                 Bartlett, TN  38135
                                 901-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

```
                                                                  2
 1            THE COURT: Now, how about The Hammocks?  Can we do
 2   that?
 3            MS. MANN: I am sorry.  Which one, Your Honor?
 4            THE COURT: The Hammocks.
 5            MR. GRAY: Your Honor, David Gray, attorney for the
 6   debtor and debtor-in-possession.
 7            MR. YNTEMA: Brady Yntema for Harleysville Mutual
 8   Insurance Company; and with me today is Mike Nelson of the
 9   Pennsylvania bar.  We have previously filed a motion pro hac
10   vice and a proposed order.  I guess, as of Monday, Mr. Nelson
11   was able to provide me with a certificate of good standing on
12   Monday, and I immediately turned around and filed it.  I do not
13   think there is an objection from Mr. Gray.  I will be arguing
14   as part of the bar of North Carolina and admitted in the
15   Western District –
16            THE COURT: Well, that's fine. We will admit him, if
17   we haven't signed the order already.  So we will allow you all
18   to participate however you want.
19            MR. YNTEMA: Thank you, Your Honor.  I appreciate that.
20            MR. NELSON: Thank you, Your Honor.
21            MR. YNTEMA: Also, I just have – and this makes me
22   comfortable.  I know the court doesn't want more documents at
23   their fingertips, but if I could approach the court and just
24   hand up an appendix of case law, please.
25            THE COURT: Okay.
```

3

1       MS. MANN: Your Honor, I would just like to announce
2  Marjorie Mann for the Michaels, the loss payees.
3       THE COURT: Who are your clients again?
4       MS. MANN: The Michaels.
5       MR. GRAY: They are the mortgage holders of the
6  property.
7       MS. MANN: They are the mortgage holders.
8       THE COURT: All right.
9       MR. YNTEMA: Your Honor, if I may just explain the
10 appendix I just handed up.  It is just an appendix of the case
11 law that I may be referring to today.  The first two pages are
12 probably what the court can look at in brief while I go through
13 the argument.  The case law that I cite has a little narrative
14 after each case telling you what the case essentially is about
15 and why I am citing to it.
16      This is Harleysville Mutual Insurance Company's motion
17 for relief from the automatic stay in this case.  Harleysville
18 Mutual has attached to its motion for relief from stay a
19 declaratory judgment complaint that they wish to pursue in the
20 Western District of North Carolina.
21      That declaratory judgment complaint requests a
22 declaratory judgment declaring the rights and obligations of
23 the parties to an insurance policy that provided property
24 coverage to a location of the Richmond Hill Inn.  The policy
25 was issued in October of 2008.

4

1          A fire occurred on the premises of the Richmond Hill
2     Inn in March of 2008 – of 2009, I apologize, and shortly
3     thereafter a petition was filed for bankruptcy in this case by
4     The Hammocks.  The Hammocks being the owners of the Richmond
5     Hill Inn.  The fire destroyed what has been termed "The
6     Mansion" on the Richmond Hill Inn, I guess I could say campus.
7          In May of 2009, this year, a proof of loss was
8     submitted, a purported proof of loss was submitted to
9     Harleysville Mutual Insurance Company asserting in excess of
10    six million dollars, and that was asserted on behalf of The
11    Hammocks, LLC.
12         Thereafter an investigation did ensue as to the claim
13    that was submitted to Harleysville Mutual Insurance Company.
14    As part of that investigation, an EUO was conducted of The
15    Hammocks.  It was requested and it was demanded under the
16    policy of insurance.  That was conducted outside of the
17    bankruptcy proceedings.  There was no objection.
18         Prior to that EUO, an examination under oath, Ron
19    Payne was specially appointed by this court to appear for The
20    Hammocks and handle the matters with regard to the insurance
21    claim and any litigation that may ensue as to that claim.
22         Ron Payne was there at the examination under oath, and
23    the managing member for The Hammocks, Dr. Gray, was presented
24    for the examination under oath and to answer questions as to
25    various matters.  The EUO took place over, I think, a two-day

5

1 period of time.

2 Thereafter, a further investigation and analysis of
3 the claim took place by Harleysville Mutual Insurance Company
4 and, at a given point, they determined that there was no
5 coverage under their policy; and, in essence, there were two
6 grounds that they decided to deny the claim.

7 The first ground being that there were mis-
8 representations in the application. Those misrepresentations
9 had the effect of voiding the policy –

10 MR. GRAY: Your Honor, we would object to this. This
11 doesn't have anything to do with the relief from stay. It has
12 to do with the allegations of this declaratory judgment action,
13 which are not proved at this point, and Mr. Yntema is
14 testifying at this point. We would object to any allegations
15 of what their position is factually.

16 THE COURT: Well, I will let him state what their
17 position is and see what –

18 MR. YNTEMA: Thank you, Your Honor. I am simply
19 reciting the allegations of the complaint and what gave rise to
20 our position as to the allegations of the complaint.

21 Again, the two grounds being the misrepresentations
22 made on the application that would, in essence, in our
23 position, void the policy *ab initio* from its beginning.

24 The second ground would be that there are certain
25 exclusions that apply to conduct, mainly arson, on the property

1  that would, in essence, exclude coverage for The Hammocks'
2  claim.
3      For that reason, we determined that, being the fact
4  that our argument would be that the policy is void *ab initio*,
5  we thought, well, is this really property of the estate then.
6  And our conclusion was, out of an abundance of precaution and
7  respect for the automatic stay of this court, that we would
8  pursue a motion for relief from automatic stay to file an
9  action in the Western District to determine the rights and
10 obligations of the parties under the policy and mainly
11 asserting those two grounds, albeit in a voluminous manner with
12 the complaint because the allegations in this case are
13 voluminous and with voluminous exhibits because the evidence in
14 this case is voluminous and we expect is going to be
15 voluminous.
16      With that said, we approach the court today on several
17 grounds in support of our motion for relief from stay, and they
18 are essentially asserted under 362(d)(1), as the court is well
19 aware, for cause. "For cause" is a flexible term and we want
20 to come under that flexible umbrella and assert to the court
21 that, in essence, the stay against Harleysville Mutual
22 Insurance Company, if there is one, prejudices them in their
23 right to a jury trial in the Western District of North
24 Carolina.
25      Also, we would like to proceed as quickly as we can

7

1   with our declaratory judgment action.  Why?  Well, the reason
2   why is that the evidence is fresh now.  In circumstances like
3   this, myself and Mike Nelson, I am sure, is accustomed that, if
4   an insurance carrier sends a letter of denial denying a
5   specific claim in the case of a fire, it can be one, two, or
6   three years before the debtor comes forward to assert a
7   declaratory judgment action to determine whether the insurer is
8   right.
9           In this case, we knew that this issue was not going to
10  go away.  We knew that it was of such a great figure, meaning
11  over six million dollars, that this matter would have to be
12  litigated.  We had the evidence.  We had the EUO.  We have done
13  our investigation.  We didn't want to let that go stale.
14          So therefore we come forward now to pursue this matter
15  in the Western District of North Carolina, and we have
16  requested a jury trial, and we have not submitted ourselves to
17  the jurisdiction of this court by submitting a proof of claim,
18  although I don't think we would have any position to submit one
19  in the first place.
20          Moving on from that, what we would like the court to
21  consider is in my research – my research is that, under section
22  1334(c)(1), I kind of use that as guidance as to whether this
23  court in its consideration can abstain from hearing this
24  matter.
25          Now, there has been no adversary proceeding filed with

8

1    this court, and that's our attempt to get a motion for relief
2    from automatic stay so we can pursue this outside of this
3    bankruptcy proceeding.  But, in this circumstance, under
4    section 1334(c)(1), there are several considerations that the
5    court can make in deciding, well, should I abstain from this if
6    it is brought before me, and it kind of lends credence to why
7    a motion for relief from stay should be granted.
8        The first consideration is that this is not a core
9    proceeding.  I have read the response of Mr. Gray on behalf of
10   the debtor, and it appears to me, and I may be speaking out of
11   turn, but I don't think there is disagreement that this is not
12   a core proceeding, that this is essentially – that this is not
13   a core proceeding and essentially simply related to the
14   bankruptcy.  It is something that, if this court were to – if
15   somehow the debtor were to come forward and file an adversary
16   proceeding in this court and pursue this, that, in essence, the
17   court would have to be asked to make findings of fact and
18   conclusions of law that essentially would be reviewed *de novo*
19   by the District Court in the end.
20       With that said, that would also affect our right to a
21   jury trial, which we have requested in this case and which we
22   think we are entitled to if and when we proceed in the Western
23   District of North Carolina.
24       There is a Western District of North Carolina case,
25   the *In re Florida Hotel Properties, Ltd.* case, which stated an

9

1 action for breach of contract and other state law claims
2 involved non-core proceeding and entitled the movant to the
3 right to a jury trial, and that case is similar to ours.  This
4 is, in essence, a contractual dispute and it is an insurance
5 contract.  It is a contractual dispute.  The Harleysville
6 Mutual Insurance Company, being a stranger to the bankruptcy,
7 is entitled to a jury trial to be conducted by the District
8 Court.
9         Again, I would like to reiterate the fact that this is
10 a prepetition insurance contract, and I would take the court's
11 attention to the *Pisgah Contractors, Incorporated,* case, which
12 I think is an interesting case and one that lends credence to
13 our position where it is stated that the bankruptcy judge does
14 not have the authority to adjudicate a state law contractual
15 claim arising out of a prepetition contract involving a party
16 who has not filed a claim in the bankruptcy proceeding.
17         That's the exact situation that we have here.  A
18 prepetition policy was procured, issued, was in effect, and we
19 are a stranger to this bankruptcy proceeding.
20         Lastly, and trying to be brief in my argument, the
21 fact of the efficiency of this case, again I go back to we feel
22 that this case, we will be able to move forward on the
23 declaratory judgment action in an efficient manner in the
24 District Court.  Meaning if we get into the District Court and
25 we are allowed to file it in the District Court, we will

10

1  proceed by way of their discovery rules, by way of pretrial
2  motions.  The District Court will be handling that.  Ron Payne,
3  we expect, will be handling that for the debtor and be
4  litigating that case outside of this bankruptcy case.
5           Once a determination is made, if the declaration is
6  entered by way of court after a jury trial that there is
7  coverage, then we will be back in this court to figure out how
8  the disbursement is supposed to be – how the funds are supposed
9  to be disbursed.
10          But as of now, all we are requesting is relief from
11 stay to proceed in the Western District of North Carolina for
12 a declaration as to, one, whether, in essence, the policy can
13 be rescinded or it can be declared void *ab initio* due to
14 misrepresentations on the application or whether certain
15 coverage under the policy applies to exclude coverage for the
16 claim that's being asserted.
17          If I can just ask to respond to any responses that are
18 made to my argument.  Thank you for your time.
19          THE COURT:  Okay.  Mr. Gray.
20          MR. GRAY:  Your Honor, obviously we haven't seen this
21 and I am sort of glad I didn't because none of those cases have
22 anything to do with this matter.
23          This obviously is a core proceeding.  These are assets
24 of the estate.  They were assets of the estate before they
25 burned.  Now the insurance claim is an asset of the estate.

11

1      This entity, Harleysville Mutual Insurance Company, is
2 not a creditor in this proceeding, never will be a creditor in
3 this proceeding.  It is an insurer who has chosen not to deny
4 the proof of loss.  This is a clear indication on their part,
5 and that's all that –
6      THE COURT: They have chosen not to deny the –
7      MR. GRAY: The claim for a loss.  They have not denied
8 that, and they don't want to do that.  They have chosen this
9 vehicle to try to avoid denying the claim because they don't
10 have any grounds to deny the claim.
11     Mr. Payne and his group are waiting for a response
12 from Harleysville Mutual Insurance.  They don't get one.  They
13 never get one.  What they get is this motion, which I guess at
14 this point it would be a deemed denial.  I guess you couldn't
15 take it any other way.
16     They are ready to file the complaint now, waiting for
17 the denial which they expected to come because it is an arson
18 claim and most insurance companies do not like to pay off on
19 arson claims, but they expected a denial and they never got
20 one.  They are ready to file their action.
21     This action has no merit at all for this proceeding,
22 Your Honor.  This is just an attempt to create another
23 litigation.  All of these allegations that have any merit at
24 all, if they do, are defenses or affirmative defenses in a
25 lawsuit that the debtor would file for the loss.  One lawsuit

12

1   with all things in it.  The debtor says we claim our loss
2   against you.  In their answer they are going to deny it and say
3   and, by the way, we don't think we are covered.  That's an
4   affirmative defense in that type action.  One lawsuit should
5   take care of this.
6          In essence, what this is trying to say is we want to
7   take time to find out whether we are insured and then we will
8   decide whether to allow the lawsuit or deny the lawsuit at that
9   time.  This is not a lawsuit that says, oh, if we determine
10  that the insurance policy is in effect, we have to pay.  That's
11  not what it says because they then would come back and say,
12  well, if there is arson, we deny the claim.
13         The position of the debtor, debtor-in-possession here,
14  is that this is one of the primary assets of the estate.  It
15  was the most valuable structure on the property of the debtor.
16  This insurance company and insurance policy was clearly in
17  effect when the fire took place, and we would say that there is
18  just no grounds for relief from the stay.  This is a core
19  proceeding.
20         If you argue efficiency, efficiency is that you have
21  one lawsuit that covers everything, and not – the lawsuit that
22  the debtor/debtor-in-possession is now ready to file based on,
23  I guess what we would say, as I indicated to Your Honor
24  earlier, a deemed denial by Harleysville by filing this
25  declaratory judgment action, but they never have denied the

13

claim, and they are trying, as I say, by this strategy, if we can call it that, to avoid doing that. And I think that is not good grounds for relief from the stay here. I don't think they should be allowed to file this action, and I think the debtor should be allowed to file its action and then they can raise these issues as appropriate defenses or affirmative defenses.

Thank you, Your Honor.

THE COURT: Ms. Mann, do you have anything?

MS. MANN: Just that the mortgage holders support the debtor on this issue.

THE COURT: All right.

MR. YNTEMA: If I could speak to just a few of those things now.

THE COURT: Yes.

MR. YNTEMA: I may have Mr. Nelson speak as to some of the more factual insurance –

THE COURT: All right.

MR. YNTEMA: Again, as far as the plaintiff moving forward on an action, and I know Mr. Gray just spoke to that issue, in this case the burden is on the insurance carrier to show arson. The burden is on the insurance carrier to show receipt. That is the logical flow that we be the plaintiff in an action. We filed the action for declaratory judgment and then we fulfilled those two burdens. That's the logical posture of this case.

14

1  It is my understanding, and Mr. Nelson can detail this
2  for the court, that there has been a letter sent to the debtor
3  stating and refunding a premium based on our position that the
4  policy was void from the beginning.  We refunded the premium
5  and sent them a check and in that letter we stated that we are
6  essentially denying the claim and we will be pursuing, what I
7  assume, legal recourse.
8  With regard to that – also, this is a non-core
9  proceeding and, again, I cite the *Pisgah* case and then also the
10 Fourth Circuit case of *Apex Corporation*, which I will just
11 leave for the court to look at, which I do think – in *Apex*
12 *Corporation*, again, my narrative shows is holding debtor's
13 prepetition based contract claim against a party who had not
14 filed a proof of claim in Bankruptcy Court was a non-core
15 proceeding.
16 We fit right into that situation.  This, again, is a
17 prepetition policy, and I will not reiterate that, but it fits
18 right into the *Apex* case, and it fits right into the *Pisgah*
19 *Contractors* case.
20 Lastly, as far as the impact of the Western District
21 Court's ruling on the insurance policy in this case, the
22 impact, again I would direct the court's attention to the *U.S.*
23 *Brass Corporation* case, which I cited in the appendix, and I do
24 think that the case law I have handed up to the court is
25 relevant.  That case, and that is one of the only cases

1  nationwide that I could find, simply states that that's not the
2  consideration that should be taken into account by the
3  Bankruptcy Court. The Bankruptcy Court should look at all of
4  the other considerations, but that's not one of the
5  considerations that should be taken into account in allowing an
6  insurer to proceed or remove the reference to the District
7  Court for trial and for litigation of the scope of coverage or
8  of the coverage issues.
9      So I do not think that that is, one, a consideration
10 relevant to our motion for relief from the automatic stay.
11     I would like to have Mr. Nelson speak to any further
12 details that he may want to add in response to the argument.
13 Thank you, Your Honor.
14     THE COURT: All right.  Mr. Nelson, do you have
15 anything?
16     MR. NELSON: Thank you, Your Honor.  Again, my name is
17 Michael Nelson.
18     Your Honor, counsel for the debtor seemed to refer to
19 what we are trying to do as a two-step process, and that
20 somehow that we are seeking first to determine whether or not
21 there is a policy and then, after that, deal with the arson.
22 He said a two-step process. That's the first I have heard of
23 that.  That's hardly the case, Your Honor.  This is a
24 declaratory judgment complaint. We are seeking to have the
25 court grant our denial.

16

1    Typically in insurance cases such as this, the policy
2    holder will assert that the insurer's position on this sort of
3    thing has been rash, unreasonable, in bad faith, and we expect
4    they will make those arguments if they file a complaint.
5    What insurers typically do to avoid those arguments
6    that the denial was rash is seek the court's imprimatur that
7    the denial of coverage should stand.  This is one lawsuit which
8    will seek to resolve all controversies between the debtor and
9    the insurance company, all at once, and there is no reason this
10   is going to be a delayed process or it is going to get done any
11   quicker if we do it their way because what they will simply do,
12   if they respond to our DJ complaint, is they are going to file
13   cross-claims.  They are going to file cross-claims for DJ, and
14   they are going to file cross-claims for breach of contract, and
15   they are probably going to file cross-claims for bad faith.
16   Those are the kind of things that typically are decided in a
17   case such as this.
18   There was also an argument that there are no grounds
19   to deny.  If you look at the declaratory judgment complaint we
20   proposed, there is ample discussion there about why a denial is
21   appropriate in this situation.
22   It is a complicated case.  There is some chance that
23   a lot of core evidence will dissipate.  The Hammocks' business
24   is not healthy right now.  They are laying off employees,
25   countless employees.  Some of those employees are moving out of

17

1  state. We are going to lose a lot of valuable evidence. We
2  won't have chances to take depositions of folks. If the
3  business does fragment, we think the documents may disappear.
4  Although we have requested documents, we would like the ability
5  to subpoena further records.
6      I do expect this to be somewhat of a complicated
7  process but also something that can get done pretty quickly at
8  the District Court level.
9      Thank you, Your Honor.
10     MR. YNTEMA: If I may just speak to one more point?
11     THE COURT: Yes.
12     MR. YNTEMA: I do not believe, and I may be speaking
13 out of turn, but I do not believe that the petition reflects
14 the policy as an asset of this case. That is one thing that I
15 reviewed long ago, and I don't think it has been changed. So,
16 therefore, I will just put that as a fact, at least, with
17 regard to our argument.
18     MR. GRAY: We did list the fire claim as part of it
19 because, even though the petition was ready to file prior to
20 the fire, it was filed sometime after.
21     Once again, Your Honor, they have not denied the
22 claim. They have denied coverage. They talk about some letter
23 and the typical thing that an insurance company does in this
24 particular situation is you don't have insurance with us and,
25 by the way, you paid us a premium and now, a year later or two

18

1    years later, whatever it is, we are sending it back to you.
2    That is not a denial of the claim.
3         THE COURT: All right. I think what I ought to do is
4    essentially continue this hearing and give the debtor a chance
5    to file its claim or its lawsuit. If you do that, I suspect
6    you are going to end up in the same place, but it would seem to
7    me that that is the better procedure to get started doing it.
8         I will continue this hearing until January 20th. If
9    by then the debtor has filed its complaint, I will deny this
10   motion. If the debtor hasn't filed its complaint by then, I
11   will grant this motion. Okay.
12        MR. NELSON: Your Honor, may I be heard?
13        THE COURT: Yes, sir.
14        MR. NELSON: Your Honor, that deprives the rights of
15   this insurance company to seek a court's review of its position
16   and, in essence, it gives them the chance to shape the lawsuit
17   the way they want to do that. We have a right to have the
18   lawsuit framed the way we want to. We are entitled to go to
19   court as a plaintiff and present our case as to why no coverage
20   should be there. And by basically making us sit on the side,
21   you are depriving us of a legal right, with all due respect.
22   And what we would like to have the court consider is, if they
23   are going to file a lawsuit, allow us to file this DJ at the
24   same time.
25        THE COURT: I don't agree with you, and I think I will

19

1  deny your request.  I think the thing to do is get all of the
2  issues teed up at once, and that the best way to start doing
3  that is with the claimant making a claim or the plaintiff
4  making a claim and going from there.  I think, if we grant this
5  request at this point, we have got a real chance of the
6  District Court saying, no, there is nothing here really to hear
7  until the plaintiff makes a claim, and then we have wasted six
8  months or so.
9  　　　　　So I think this is the best way to get on with it.  So
10 we will see where we go.  Okay.  And any rights that the
11 insurance company has can be litigated in that lawsuit.  So I
12 don't think anybody is giving up any rights.  Okay.
13 　　　　　MR. GRAY: Thank you, Your Honor.
14 　　　　　THE COURT: Would you do that order, Mr. Gray?
15 　　　　　MR. GRAY: I will.
16 　　　　　MS. MANN: Thank you, Your Honor.
17 　　　　　MR. YNTEMA: Thank you, Your Honor.
18 　　　　　MR. NELSON: Thank you, Your Honor.
19 　　　　　THE COURT: Thank you all.
20 　　　　　(Off the record in this matter at 11:44 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Patricia Basham

Patricia Basham, Transcriber

Date: November 19, 2009