IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| In re:<br>THE HAMMOCKS, LLC d/b/a,<br>Richmond Hill Inn,<br>　　　　Debtor, | §<br>§<br>§<br>§<br>§ | 09-10332/Chapter 11<br><br>Adversary Proceeding<br>№ 09- |
| THE HAMMOCKS, LLC d/b/a Richmond<br>Hill Inn, Debtor-in-Possession,<br>　　　　Plaintiff,<br>v.<br><br>HARLEYSVILLE MUTUAL INSURANCE<br>COMPANY,<br>　　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br>COMPLAINT |

　　Plaintiff, complaining of the Defendant, alleges and says the following:

　　1.　Plaintiff, The Hammocks, LLC d/b/a Richmond Hill Inn ["the Hammocks"], is a limited liability company duly organized and existing under the laws of the State of South Carolina, authorized to do business in North Carolina under the name "Richmond Hill Inn, LLC," and in fact doing business in Buncombe County, North Carolina.

　　2.　Defendant, Harleysville Mutual Insurance Company ["Harleysville Insurance"], is a corporation duly organized and existing under the laws of the State of Pennsylvania, authorized and licensed to engage in insurance business in North Carolina, and in fact conducting insurance business in North Carolina.

　　3.　The Hammocks filed a Chapter 11 bankruptcy proceeding on or about March 25, 2009.

　　4.　In this action, the Hammocks brings breach of contract, bad faith refusal, and unfair trade act claims arising from the Hammocks' post-petition Proof of Loss, constituting formal demand for payment under its Harleysville Insurance policy, and Harleysville Insurance's post-petition denial of such insurance claim.

5.   This Court has jurisdiction over this action under the provisions of 28 U.S.C. § 157(b) and, in the alternative, 28 U.S.C. § 157(c).

6.   Since October 2005, the Hammocks have owned certain Buncombe County, North Carolina real property, commonly known as the Richmond Hill Inn ["the Inn Property"], more particularly described in the deeds recorded in Book 4124 at Page 1854 and in Book 4124 at Page 1866, Buncombe County Registry.

7.   Beginning in October 2005, the Hammocks maintained and used the Inn Property, including a center-piece 1889 Victorian mansion ["the Mansion"] and other buildings thereon, in the operation of a hotel or inn business, providing fine lodging and dining for guests.

8.   In October 2008, in exchange for good and valuable consideration, Harleysville Insurance issued the Hammocks a commercial insurance policy with policy number OF 3M2977 and in effect for a policy term beginning October 19, 2008 and ending October 19, 2009 ["the Insurance Policy"].

9.   By operation of law, pursuant to Article 44 of Chapter 58 of the North Carolina General Statutes, the Insurance Policy incorporated and conformed to the standard provisions and conditions of the North Carolina Standard Fire Policy.

10.   Under the Insurance Policy, the Hammocks provided the Hammocks, among other coverages, more than $13.2 million in fire insurance on the Mansion, the buildings, and personal property on the Inn Property and an additional $3 million in "income coverage" insuring the Hammocks against lost income and extra expenses resulting from a fire loss.

11.   More particularly, the Insurance Policy insured the Mansion against fire loss at its "agreed value," $5,089,119.00, with a $10,000.00 deductible; insured the personal property on the Inn Property against fire damage at its "agreed value," $1,500,000.00, with a $10,000.00 deductible; provided $50,000.00 in insurance coverage for debris removal; and provided $3,000,000.00 in coverage insuring rents and earnings lost and extra expenses incurred by reason of a fire.

12.   At about 1:00 a.m. on the morning of March 19, 2009, at which time the Insurance Policy remained in full force and effect, fire destroyed most of the Mansion and damaged or destroyed personal property in and around the Mansion.

13. The Hammocks promptly notified Harleysville Insurance of the fire and the resulting losses to the Mansion and the personal property in and around the Mansion.

14. The Hammocks filed its Chapter 11 bankruptcy proceeding on or about March 25, 2009.

15. Thereafter, by letter dated April 2, 2009, Harleysville Insurance demanded that the Hammocks provide it certain records and documents; demanded that a party authorized to testify on behalf of the Hammocks, LLC submit to an Examination under Oath on or around June 10, 2009; and requested that the Hammocks provide it a sworn proof of loss within sixty (60) days.

16. Since May 2009, the Hammocks have responded to Harleysville Insurance's document requests by providing all relevant records and documents, totaling more than 10,400 pages of documents.

17. On or about May 29, 2009, the Hammocks submitted to Harleysville Insurance a Sworn Statement in Proof of Loss, claiming a total of at least $6,021,563.00, after deduction of the Insurance Policy's $20,000.00 deductibles.

18. More particularly, by the Proof of Loss, the Hammocks claimed insured losses of $5,089,119.00 by destruction of the Mansion, at least $824,929.00 for lost personal property, $48,400.00 for debris removal, and $79,133.00 for income lost and extra expenses incurred, by reason of the fire.

19. On June 10 and 11, 2009, Dr. William Gray, the Manager and a minority-interest Member of the Hammocks, submitted himself for examination under oath by attorneys representing Harleysville Insurance.

20. As of the date of this Complaint, Harleysville Insurance has failed to communicate to the Hammocks its affirmation or denial of the Hammocks' fire insurance claim.

21. However, on October 10, 2009, Harleysville Insurance filed in the United States Bankruptcy Court for the Western District a motion for relief from stay, seeking leave to file against the Hammocks an action to void the Insurance Policy based upon alleged arson and based upon purported misrepresentations alleged to have occurred pre-petition and post-petition.

22. Harleysville Insurance's motion for relief from stay anticipatorily repudiated its obligations under the Insurance Policy and constituted a denial of the Hammocks' claim under the Insurance Policy.

FIRST CAUSE OF ACTION: BREACH OF CONTRACT

23. Pursuant to Rule 7010 of the Federal Bankruptcy Rules, the Plaintiff incorporates by reference paragraphs #1 through #22, as if fully set forth and realleged.

24. By issuing the Insurance Policy and accepting the Hammocks' premium payment, Harleysville Insurance contracted and agreed to insure the Hammocks against any fire loss.

25. The Hammocks has fully complied with each and every term, condition, and provision of the Insurance Policy and insurance contract, in the times and manners requested by the Insurance Company. Moreover, every condition precedent to the Insurance Company's contractual obligations has been satisfied.

26. Despite the Hammocks' requests and demands, Harleysville Insurance has failed and refused to pay the Hammocks the amount due it under the terms of the Insurance Policy by reason of the fire.

27. Harleysville Insurance's filing of the motion for relief constructively denied the Hammocks' claim for insurance proceeds due under the Insurance Policy and anticipatorily breached the Insurance Policy.

28. Harleysville Insurance breached the Insurance Policy by various acts and omissions, including but not limited to the following:

   (a) By failing to pay the Hammocks the insurance proceeds due by reason of the Hammocks' direct loss by fire of the "agreed value" of the Mansion, in the amount of $5,089,119.00;

   (b) By failing to pay the Hammocks the insurance proceeds due by reason of the Hammocks' direct loss by fire of business personal property, in the amount of $824,929.00;

   (c) By failing to pay the Hammocks the insurance proceeds necessary to cover the Hammocks' debris removal expenses, in the amount of $48,400.00;

4

   (d) By failing to pay the Hammocks the insurance proceeds due by reason of the Hammocks' lost rent and earnings and additional expenses, in the amount of $79,133.00; and

   (e) By failing to reasonably adjust and pay the Hammocks the full amount necessary to compensate the Hammocks for its fire loss of the value of the Mansion and business personal property, for debris removal, and for rents and earnings lost and additional expenses incurred by reason of the fire.

   29. As a direct and proximate result of Harleysville Insurance's breach of contract, the Hammocks has sustained damages in the amount of $6,021,563.00, together with interest accruing as provided by law.

## SECOND CAUSE OF ACTION: BAD FAITH REFUSAL TO PAY OR SETTLE AN INSURANCE CLAIM

   30. Pursuant to Rule 7010 of the Federal Bankruptcy Rules, the Plaintiff incorporates by reference paragraphs #1 through #29, as if fully set forth and realleged.

   31. Harleysville Insurance has refused to pay or to settle the Hammocks' valid insurance claims under the Insurance Policy.

   32. Harleysville Insurance's refusal to pay or to settle the Hammocks' claims has been in bad faith and in breach of the duty of good faith and fair dealing it owes the Hammocks as its insured.

   33. Harleysville Insurance has accompanied and accomplished this bad faith refusal to settle the Hammocks' claims with aggravating and outrageous conduct, which conduct has been willful, oppressive, malicious, capricious, and grossly negligent; has been in reckless and wanton disregard of the Hammocks' rights under the Insurance Policy and the law of North Carolina; and has constituted an inequitable assertion and a gross misuse of its power and position.

   34. Harleysville Insurance's aggravating and outrageous conduct has included, among other acts and omissions, the following:

   (a) Harleysville Insurance's failure to pursue investigation and adjustment of the Hammocks' claims under the Insurance Policy, diligently and in good faith;

5

(b) Harleysville Insurance's failure to affirm or deny, or to communicate its affirmation or denial of, the Hammocks' claim within a reasonable time of the submission of the Proof of Loss;

(c) Harleysville Insurance's failure to communicate its denial of the Hammocks' coverage within a reasonable time after its determination of its intent to deny such claim and, upon information and belief, any coverage;

(d) Harleysville Insurance's failure to attempt a fair settlement with the Hammocks, although liability has become reasonably clear;

(e) Harleysville Insurance's failure to make a prompt offer on the Hammocks' claim;

(f) Harleysville Insurance's use of intimidation and coercion, including but not limited to its efforts to propagate and use vexatious but unsubstantiated allegations against a Manager and minority Member of the Hammocks to chill and dissuade the Hammocks' efforts to pursue its valid insurance claim;

(g) Harleysville Insurance's efforts to compel the Hammocks to resort to litigation to recover on its valid claims;

(h) Harleysville Insurance's attempt to wear down the financially vulnerable Hammocks by procrastination, delay, and litigation; and

(i) Harleysville Insurance's declared intent and affirmative efforts to deny any insurance proceeds to the Debtor-in-Possession in this bankruptcy, based upon the alleged post-petition fraud of a person whose alleged post-petition fraud is not legally attributable to the Debtor-in-Possession or the Bankruptcy Estate.

35. As a direct and proximate result of Harleysville Insurance's tortious, bad faith refusal to pay or to settle the Hammocks' insurance claims, the Hammocks has sustained damages in an amount in excess of ten thousand dollars ($10,000.00).

36. By reason of Harleysville Insurance's malicious, willful, and wanton bad faith refusal to pay or to settle the Hammocks' insurance claims, the Hammocks are entitled to punitive damages in excess of ten thousand dollars ($10,000.00).

6

THIRD CAUSE OF ACTION:  UNFAIR OR DECEPTIVE TRADE ACTS

37. Pursuant to Rule 7010 of the Federal Bankruptcy Rules, the Plaintiff incorporates by reference paragraphs #1 through #36, as if fully set forth and realleged.

38. Harleysville Insurance's aggravated and wrongful conduct, as more fully set forth herein, constitute unfair or deceptive trade acts in or affecting commerce in North Carolina.

39. Upon information and belief, Harleysville Insurance willfully engaged in such unfair or deceptive trade acts.

40. As a direct and proximate result of Harleysville Insurance's unfair or deceptive trade acts, the Hammocks has sustained damages in an amount in excess of ten thousand dollars ($10,000.00).

WHEREFORE, the Plaintiff prays the Court as follows:

1. That the Plaintiffs have and recover from the Defendant damages in the amount of $6,021,563.00, together with interest accruing as provided by law, as damages for the Defendant's breach of contract;

2. That the Plaintiffs have and recover a sum in excess of ten thousand dollars ($10,000.00) as compensatory and punitive damages for the Defendant's bad faith refusal to pay or to settle a valid insurance claim;

3. That the Plaintiffs have and recover damages in excess of ten thousand dollars, trebled pursuant to N.C.G.S. § 76-16, for the Defendant's unfair or deceptive trade acts;

4. That the Plaintiff have and recover from the Defendant its reasonable attorneys' fees, pursuant to N.C.G.S. § 75-16.1;

5. That the costs of this action be taxed against the Defendant; and

6. For such other and further relief as the Court may deem just and proper.

This, the 2nd day of December, 2009.

        s/Ronald K. Payne
        Ronald K. Payne
        N.C. Bar № 7961
        Philip S. Anderson
        N.C. Bar № 21323
        Attorneys for Plaintiff
        Long, Parker, Warren, Anderson & Payne, P.A.
        14 South Pack Square, Suite 600
        Asheville, North Carolina  28801
        Telephone:  828/258-2296
        Fax:  828/253-1073
        email:  philip@longparker.com